IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

Hazel Stoudemire, #220501          )
                                   )    Civil Action No. 8:08-3866-HFF-BHH
                Petitioner,        )
                                   )
v.                                 )    **REPORT AND RECOMMENDATION**
                                   )    **OF MAGISTRATE JUDGE**
SCDC and Warden, Lee               )
Correctional Institution,          )
                                   )
                Respondents.       )
_____)

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254.  This matter is before the Court on the respondents' motion for summary judgment.  (Dkt. # 11.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on November 20, 2008.[1]  On February 25, 2009, the respondents moved for summary judgment.   By order filed February 26, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised

_____

[1]This date reflects that the petition was date stamped as received on November 20, 2008, at the Lee Correction Institution mailroom.  (Pet. Attach.)  *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

of the summary judgment dismissal procedure and the possible consequences if he failed

to adequately respond to the motion.  On March 12, 2009, the petitioner filed a response

opposing the respondents' summary judgment motion.

## **FACTS PRESENTED**

The petitioner is currently confined to the Lee Correctional Institution ("LCI").  In

January 2008, the petitioner was charged with the disciplinary offenses for striking an

inmate with or without a weapon and riot for an incident that took place on December 22,

2007.  (Resp't's Mem. Supp. Summ. J. Mot. Ex. 2 and 3.)  On January 22, 2008, a hearing

was held on the disciplinary charges and the petitioner was convicted as charged.  He was

sanctioned with the loss of privileges, disciplinary detention, and restitution.  The petitioner

was not sanctioned with the loss of any good time credits because he is not able to earn

any good time credits because he is serving a life sentence.  *See* S.C. Code Ann. §16-3-20.

The petitioner filed a Step One grievance on January 22, 2008, which was denied.

(Resp't's Mem. Supp. Summ. J. Mot. Ex.  4.)  The petitioner appealed the decision in a Step

Two grievance which he filed on May 27, 2008.  (*Id.* Ex. 5.)   The petitioner's Step Two

grievance was also denied. (*Id.*) The petitioner then filed an appeal with the Administrative

Law Court ("ALC") on August 28, 2008.  (*Id.*  Ex. 6.)  The ALC dismissed the petitioner's

case on October 22, 2008, stating that since the petitioner had not lost or failed to earn any

good time credits as a result of the disciplinary convictions, he had not been deprived of a

state created liberty interest.  (*Id.* Ex. 7.)  The petitioner did not appeal the decision of the

ALC.

In this habeas petition, the petitioner raises two grounds for relief both alleging violations of his due process rights. In Ground One, the petitioner raises the issue of "whether the disciplinary hearing revealed a sufficiently detailed testimony from the alleged (sic) victim/accuser, in which the Petitioner could have intelligently rebut (sic)." In Ground Two, the petitioner raises the issue of "whether the charging officer's report was sufficient to be considered evidence, and stand alone as substantial evidence."

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**Exhaustion**

The respondent contends that this habeas petition should be dismissed because the petitioner has failed to exhaust his state remedies. The undersigned agrees.

A district court cannot hear a prisoner's challenge of a disciplinary conviction and sentence until state remedies have been fully exhausted. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490-91 (1973). To satisfy the exhaustion requirement,

a habeas petitioner must fairly present his claim to the state's highest court." *Matthews v.*

*Evatt,* 105 F.3d 907, 910-911 (4th Cir.1997).

To exhaust state court remedies in South Carolina, an inmate must appeal the final

decision of the South Carolina Department of Corrections ("SCDC") pursuant to the South

Carolina Administrative Procedures Act ("SCAPA"), S.C. Code Ann. § 1-23-310 to 400. *See*

*Al Shabazz v. South Carolina*, 527 S.E.2d 742, 754-756 (S.C. 2000).  Under the SCAPA,

if an inmate is not satisfied with the agency's final decision, the inmate must  file an appeal

with the ALC.  S.C. Code Ann. § 1-23-380; *Furtick v. S.C. Dep't of Corrections*, 649 S.E.2d

35, 37-38 (S.C. 2007).  If the decision of the ALC is not favorable, the SCAPA requires that

the inmate must then pursue review by the South Carolina Court of Appeals. S.C. Code

Ann. § 1-23-380(A).  An inmate's failure to exhaust his administrative remedies may only

be excused upon a showing of cause and prejudice.  *Carmona v. BOP,* 243 F.3d 629, 634

(2d Cir. 2001) (*cited in McClung v. Shearin,* 90 Fed. Appx. 444, 445 (4th Cir. 2004)

(unpublished)).

The petitioner acknowledges that he did not file an appeal in the South Carolina

State courts.  However, he contends that the South Carolina Court of Appeals and the

South Carolina Supreme Court will not accept disciplinary appeals from indigent inmates.

(Pet'r's Mem. Opp. Summ. J. Mot. at 2.)   He states that South Carolina law is clear that

motions for informa pauperis may be granted only if authorized by statute or required by the

Constitution.  (*Id.*)  Therefore, he alleges it would have been fruitless for him to seek judicial

review in the state courts.  (*Id.*)

In *Sullivan v. South Carolina Dept. of Corrections*, 586 S.E.2d 124 (S.C. 2003), the South Carolina Supreme Court citing its decision in *Martin v. South Carolina Dept. of Corrections*, 565 S.E.2d 756 (S.C. 2001), held that there is no statutory provision allowing for the waiver of filing fees for an appeal brought under the SCAPA.  In reaching its conclusion, the court noted that S.C. Code § 8-21- 310(11)(a)  "provides that a clerk of court must collect a filing fee of $100.00 for any complaint or petition." *Id.* at 757.  However, the court also noted that the issues raised in *Sullivan* did not involve "fundamental rights," so access to the courts was not constitutionally required.  355 S.C. at 446.  See also *Martin,* 471 S.E.2d at 135 (noting that "where certain fundamental rights are involved, the Constitution requires that an indigent be allowed access to the courts.").  Here, the petitioner is alleging violations of his constitutional due process rights which presumably would require access to the courts and allow the petitioner to proceed without paying the fees.

The petitioner's indigent status and his ignorance of the law do not constitute cause sufficient to excuse his default.  *See Whitley v. Bair,* 802 F.2d 1487, 1503 (4th Cir.1986); *Miller v. Bordenkircher,* 764 F.2d 245, 251-52 (4th Cir. 1985).  The petitioner did not exhaust his state remedies.  Further, he has failed to show any cause or prejudice which would excuse his failure to exhaust.  Therefore, this habeas claim is procedurally barred.

Even assuming for the sake of argument that the petitioner's futility argument establishes good cause, the petitioner has not established that he is entitled to habeas relief.  The Due Process Clause applies when government action deprives an individual

of a legitimate liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 570 (1972). Thus, the first step in analyzing a procedural due process claim is identifying whether the alleged deprivation impacts such a protected interest. *See Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997).

As set out above, the petitioner was sanctioned with the loss of privileges, disciplinary detention, and restitution. The plaintiff did not lose any good-time credits as a result of the disciplinary action. The Supreme Court has specifically rejected the contention that disciplinary hearings which result in placement in administrative segregation, as opposed to loss of good-time credits, necessarily implicate a liberty interest. *Sandin v. Conner,* 515 U.S. 472, 486 (1995). Only where the administrative segregation presents a "type of atypical, significant deprivation," will due process be required. *Id.* Consistent with the Supreme Court's decisions on this issue, the Fourth Circuit has consistently found that administrative segregation is simply not an atypical or significant hardship in relation to the ordinary incidents of prison life. *See McNeill v. Currie,* 84 Fed. Appx. 276 (4th Cir. 2003); *Beverati v. Smith,* 120 F.3d 500, 503-04 (4th Cir. 1997)(holding confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative segregation).

In *Wilkinson v. Austin,* 545 U.S. 209 (2005), the United States Supreme Court held that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished supermax facilities from

normal segregation units on three grounds.  First, inmates in the supermax facility were

"deprived of almost any environmental or sensory stimuli and of almost all human contact."

*Wilkinson,* 545 U.S. at 214.  Second, they were assigned for "an indefinite period of time,

limited only by [the] inmate's sentence."  *Id.*  Third, once assigned to supermax "[i]nmates

otherwise eligible for parole lose their eligibility while incarcerated" at the facility.  *Id.* at 215.

After noting other onerous conditions of confinement, including that the cells were lighted

24 hours per day, the court stated:  "While any of these conditions standing alone might not

be sufficient to create a liberty interest, taken together they impose an atypical and

significant hardship within the correctional context."  *Id.* at 224.  In this case, while the

petitioner refers to his administrative segregation as "solitary confinement," he does not

allege any atypical and significant conditions like those at issue in *Wilkinson.*   *Sadler v.*

*Young,* No. 7:04cv00580, slip op. at *9 (W.D .Va. Apr. 28, 2006) (finding that the imposition

of disciplinary isolation does not amount to an atypical prison condition)(*citing Kennedy v.*

*Blankenship,* 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (holding that placement in punitive

isolation was not an atypical and significant deprivation even though prisoner faced

restrictions in mail, telephone, visitation, commissary, and personal-possession privileges));

*Hutto v. Finney,* 437 U.S. 678, 686 (1978) (finding that confinement to punitive isolation

does not implicate cruel and unusual punishment unless conditions themselves are cruel

and unusual).  Therefore, the undersigned finds that the petitioner did not have a liberty

interest in being assigned to the general population and, thus, his due process claim fails.

Even if the administrative segregation in this case was the type of atypical significant deprivation so as require due process, the process which was afforded to the petitioner satisfied his due process rights.  The United States Supreme Court has mandated the minimal procedural safeguards for prison disciplinary hearings.  *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).  In *Wolff,* the Court held the following requirements are sufficient to satisfy this minimal standard of due process in the prison setting: 1) advance written notice of the charges;  2) a written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and 3) the right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.  *Wolff,* 418 U.S. at 563-576.

Here, the petitioner does not allege that he was denied the procedural due process requirements of *Wolff*.  Rather the petitioner contends that he was not allowed to confront his accuser.  He alleges his accuser was the inmate who was assaulted.  However, the petitioner's accuser was the reporting officer, Captain Johnson, and he was present at the disciplinary hearing.  The inmate who was assaulted was the victim.  The petitioner does not dispute that prior to the hearing he never requested the presence of any witnesses at the hearing.  Thus, even viewing this as an allegation that the petitioner's due process rights as set forth in *Wolff* were violated because he was not allowed to call witnesses, the undersigned finds the petitioner's allegations to be without merit because the petitioner did not properly request any witnesses at the hearing.

Moreover, a decision by a prison disciplinary board satisfies due process if there is some evidence in the record to support the board's decision. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). *See Zimmerlee v. Keeney*, 831 F.2d 183 (9th Cir. 1987)(holding the "some evidence" requirement meets the constitutional due process standard even when the evidence is provided by an unnamed informant).    In *Hill,* the United States Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions. The Supreme Court held that due process is satisfied if there is "some" evidence to show that the inmate committed the offense. 472 U.S. at 455.   The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

472 U.S. at 456.   The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the disciplinary board's decision.  472 U.S. at 455-56.  This standard requires "only that the decision not be arbitrary or without support in the record."  *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir.1999). As the United States Supreme Court noted in *Hill:*

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence

10

in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56.  Judicial review of prison disciplinary actions is, therefore, limited solely to a determination to whether there is some evidence in the record to support the DHO's decision.  Here, there is some evidence in the record to support the DHO's decision, namely the officer's incident report.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Respondents' motion for summary judgment (Dkt. # 11) be GRANTED and the Petitioner's claims be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

June 11, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).